## RYAN v. NEW YORK CENTRAL RAILROAD CO.

1. Equity—Freight Brakeman—Railroads.

    Bill by freight brakeman to enforce alleged seniority rights was properly dismissed as against railroad companies as stating no cause for equitable relief.

2. Associations—Internal Organization—Seniority Rights.

    Claim of lack of jurisdiction in board of appeals of railroad brotherhood to finally determine appeal from grievance committee involving seniority rights *held*, without merit, where record shows a number of other like cases considered by said body and constitution of the grand lodge provides for such final determination.

3. Master and Servant—Seniority Rights.

    Railroad brakeman has no inherent right to seniority in service nor by being employed except as provided for in the contracts entered into and rules adopted by the company relating thereto.

4. Associations—Seniority Rights—Interference by Courts.

    By membership in brotherhood, member consented to mode of determination of seniority rights as provided in valid by-laws and determination made in good faith in accordance therewith, in the absence of fraud or arbitrary action, precludes interference by the courts.

Appeal from Jackson; Simpson (John), J. Submitted April 26, 1934. (Docket No. 166, Calendar No. 37,811.) Decided June 4, 1934.

Bill by William Edward Ryan against New York Central Railroad Company and others to construe contracts fixing seniority rights and for an injunction. Bill dismissed. Plaintiff appeals. Affirmed.

*Frank L. Blackman,* for plaintiff.

*Bisbee, McKone, Wilson, King & Kendall (J. J. Danhof,* of counsel), for defendants New York Central Railroad Company and Michigan Central Railroad Company.

*Monaghan, Crowley, Reilley & Kellogg,* for defendants Brotherhood of Railroad Trainmen, Order of Railway Conductors, and Park Lodge No. 555, Brotherhood of Railroad Trainmen.

NELSON SHARPE, C. J.   The purpose of the organization known as the "Brotherhood of Railroad Trainmen," is stated in the "preamble" to the constitution of its grand lodge, and reads as follows:

"To unite the railroad trainmen; to promote their general welfare and advance their interests, social, moral, and intellectual; to protect their families by the exercise of benevolence, very needful in a calling so hazardous as ours, this fraternity has been organized.

"Persuaded that it is for the interests both of our members and their employers that a good understanding should at all times exist between the two, it will be the constant endeavor of this organization to establish mutual confidence, and create and maintain harmonious relations.

"Such are the aims and purposes of the Brotherhood of Railroad Trainmen."

To that end its officials endeavor to secure from the railroad companies the adoption of such rules and usages in respect to the wages and working conditions of its members as are fair and reasonable and to their mutual advantage, thus avoiding strikes and other unpleasantness.   Agreements between them are at times in the form of contracts.   Seniority in service is a right highly prized by and of

value to the employees. Negotiations therefor are conducted by the officers of the brotherhood under provisions in its constitution and laws. The individual members do not participate therein, but when contracts are made or rules adopted affecting their rights they may seek review of them by application to their grievance committees and appeal therefrom to other officials called the "courts" of the order. The railroad companies apparently have but little personal interest in such matters.

The main line of the Michigan Central Railroad, now a part of the New York Central Railroad, extends from the city of Detroit to the city of Chicago. It is divided into three divisions; the eastern extending from Detroit to Jackson, the middle from Jackson to Niles, and the western from Niles to Chicago. Each division has a superintendent, and there is through passenger service extending over the three divisions.

In October, 1909, the Michigan Central Railroad placed in effect what is known as schedule rule No. 25, reading as follows:

"When a passenger run extends over more than one superintendent's division, each division shall furnish a percentage of the crews. Percentage shall be determined by the number of miles on each division."

Effective as of August 1, 1914, an agreement was entered into between the brotherhood and the railroad company creating interchangeable rights as between passenger and freight trainmen. Under it freight brakemen might earn seniority rights if employed in the passenger service and passenger brakemen if employed in the freight service. A controversy arose over the application of this provision, and certain proceedings were had in the

grand lodge convention of the brotherhood, resulting in its change by the railroad, effective May 1, 1917, to read as follows:

"Baggagemen and brakemen on western and middle divisions shall be given rights on all through passenger runs between Detroit and Chicago as baggagemen and brakemen respectively."

By it the word "crews" in the 1909 rule was construed to refer to conductors only, and under it the brotherhood and the railroad denied seniority and passenger rights to brakemen earned prior thereto. This construction was recognized and adhered to until about the year 1931, when James Wiltsie, the chairman of the Jackson lodge of the brotherhood, was instructed by it to submit the matter to the grievance committee of the order, with the request that the date therein be changed so that it would be effective as of August 1, 1914, instead of May 1, 1917.

After a hearing, at which the parties interested were present or represented, the grievance committee complied with the request. An appeal therefrom was taken to the board of directors of the brotherhood and a hearing had after due notice to, and appearance by, the parties interested, and the action of the grievance committee was set aside by the board and a finding made that seniority rights with respect to through trains, in so far as brakemen and baggagemen were concerned, should be determined as of May 1, 1917. An appeal was taken from this decision to the board of appeals, the final court of the order for the determination of such matters. The following entry appears in its minutes:

"After careful consideration of all the evidence, both oral and written, the board of appeals were

of the opinion that the decision of the board of directors was proper. It was, therefore, decided to deny appeal of Brother J. Wiltsie.''

The plaintiff, a freight brakeman, who had been in the employ of the Michigan Central company and its successor, the New York Central Railroad Company, since January 29, 1912, filed the bill of complaint herein. The proceedings as outlined above were set forth therein at some length. In his prayer for relief he asked that the court construe the contracts referred to and determine his rights, and those of other parties interested, thereunder; that the railroad and the brotherhood be compelled to adopt the construction which will be made by the court, and that the railroad be enjoined from running trains over the middle and western divisions of its road manned by men who have no seniority rights to such runs. His right to relief is based upon the denial of seniority rights between 1914 and 1917, which he claims was a taking of his property without due process of law in violation of his constitutional rights.

Motions to dismiss were made by both the railroad company and the brotherhood. After the submission of some proof, the trial court entered a decree dismissing the bill, from which the plaintiff has appealed.

The railroad companies in their answer asked dismissal for the reason that the allegations therein applicable to them state no cause for equitable relief, and that plaintiff's remedy, if any, as against them is in an action at law for breach of contract. Plaintiff's counsel in his brief concedes that under the holding of this court in *Mosshammer* v. *Railway Co.*, 221 Mich. 407, a mandatory injunction may not be issued ''to restrain the breach of a contract

for personal services." It follows that the bill was properly dismissed as to them.

One of the grounds on which the brotherhood asked for dismissal was—

"That the very subject-matter having been determined by the properly constituted and existing tribunals provided by the constitution and laws of the Brotherhood of Railroad Trainmen and there being no allegation of fraud upon the part of plaintiff in this bill of complaint, with respect to such final determination, this court has no jurisdiction to determine the subject-matter of plaintiff's complaint."

Counsel for the plaintiff insists that under the rules of the brotherhood the decision of the grievance committee was final, and no appeal could be taken therefrom. It is difficult for one not a member of the order to harmonize the provisions in the constitution and laws relative to this question. In some of them the words "grievance committee" appear, and in others the words "general committee." The printed "report of the board of directors" for the year 1931 and the "report of the board of appeals" for October, 1931, were put in evidence. The proceedings on the appeals here taken appear in them. Mr. Wiltsie was present at both hearings, and no question was raised by him or by any other person as to the jurisdiction of the board of directors or the board of appeals to consider the matter presented. The "report of the board of appeals" discloses that a number of other cases involving seniority rights were considered and disposed of by it at the same meeting. The claim of a lack of jurisdiction is, in our opinion, without merit.

The reason for the appeal from the action of the grievance committee to the board of directors was thus stated:

"The action taken by this last-named committee contemplates making seniority for middle and west divisions men retroactive from May 1, 1917, to August 1, 1914, in violation of all past practices, laws and policies of the brotherhood. The action of which will force out of employment about 25 to 30 men on the Detroit division and reduce a like number from passenger to freight and in consideration thereof I wish to request a hearing before your honorable body at the earliest possible date to consider this very important matter."

The same question was presented to the board of appeals. While no fraud is charged, counsel for the plaintiff insists that the decision of both boards was due to a "mistake" made by them, and is not conclusive on the rights of plaintiff. The mistake claimed is not as to any material fact presented to or considered by the boards, but in the conclusion reached in their interpretation of the contract and rules when applied to the facts presented. It is not unusual for a claim of this kind to be made to the decision reached by courts of last resort.

The constitution of the grand lodge of the brotherhood provides for a board of appeals and the manner of their selection. It provides for appeals in certain cases by members of subordinate lodges, and for a report of its decisions and the reasons therefor to the grand lodge. It then provides:

"Such decision shall be the final adjudication of any and all rights and questions included in the appeal."

Is the plaintiff bound thereby? He has no inherent right to seniority in service, nor did such right

arise out of his employment by the railroad company except as provided for in the contracts entered into, and the rules adopted by the company relating thereto. One of the purposes of the brotherhood is "to promote their general welfare and advance their interests" and to maintain "a good understanding" with their employers. To avoid strikes and litigation, the members agreed that questions affecting their rights in service should be finally determined by its board of appeals.

No claim is made, nor would the record justify a finding, that the decision of this board was the result of fraud or arbitrary action on its part. It will be presumed that its members acted in good faith and that their only desire was to place such a construction upon the contract and rules as would be beneficial to the entire brotherhood. By his membership, the plaintiff consented to the manner in which his claim of seniority rights should be disposed of, and he is bound thereby.

The following cases in which somewhat similar questions were decided tend strongly to support this conclusion: *Simpson* v. *Grand International Brotherhood of Locomotive Engineers,* 83 W. Va. 355 (98 S. E. 580); *Shaup* v. *Grand International Brotherhood of Locomotive Engineers,* 223 Ala. 202 (135 South. 327).

This is the first time this court has been called upon to pass upon such a question, but it has been held in a number of cases that when the by-laws of fraternal organizations, if reasonable and valid, provide a mode for determining when relief shall be given or denied to members by tribunals provided for therein, redress therefor may not be sought in the courts. See, *VanPoucke* v. *Netherland St. Vincent De Paul Society,* 63 Mich. 378; *Canfield* v. *Great Camp, Knights of Maccabees,* 87

Mich. 626 (13 L. R. A. 625, 24 Am. St. Rep. 186); *Fillmore* v. *Great Camp, Knights of Maccabees,* 103 Mich. 437; *Raymond* v. *Farmers' Mutual Fire Ins. Co.,* 114 Mich. 386; *Hogadone* v. *Grange Mutual Fire-Ins. Co.,* 133 Mich. 339; *Patrons' Mutual Fire Ins. Co.* v. *Attorney General,* 166 Mich. 438; *Monger* v. *New Era Association,* 171 Mich. 614; *Howe* v. *Patrons' Mutual Fire Ins. Co.,* 216 Mich. 560.

The decree is affirmed. No costs will be allowed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.