ORDER OF RAILWAY CONDUCTORS OF AMERICA et al. v. SHAW et al.

No. 29515.    Oct. 7, 1941.

Rehearing Denied Dec. 2, 1941.

*119 P. 2d 549.*

Grimm, Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, Iowa, and Abernathy & Abernathy, of Shawnee, for plaintiffs in error Order of Railway Conductors, J. A. Phillips, President of Order of Railway Conductors, A. B. Pearson, General Chairman of the General Committee of O.R.C. on C.R.I. & P., and George H. Young et al., interveners.

Leroy G. Cooper and V. H. Albertson, both of Shawnee, for defendants in error Clinton L. Shaw and W. W. Riegel.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, all of Oklahoma City, for defendants in error

666

Frank O. Lowden, James E. Gorman, and Joseph B. Fleming, Trustees of the Estate of Chicago, Rock Island & Pacific Railway Company.

GIBSON, J. This action was instituted in the district court of Pottawatomie county by two trainmen in the employment of the Chicago, Rock Island & Pacific Railway Company against the trustees of the estate of said company, its division superintendent, and the Order of Railway Conductors and certain of its executive officers to enjoin defendants from interfering with the alleged seniority rights of plaintiffs, as conductors on said railway. Judgment was rendered for plaintiffs granting permanent injunction, and defendants appeal.

The particular act here sought to be enjoined is the attempt of defendants to place in operation a certain rule or order promulgated by said Order of Railway Conductors and acquiesced in by the operators of the railroad. Plaintiffs allege that if said rule is placed in operation, it will deprive them of certain seniority rights acquired through contractual relationship with the railroad, and prevailing over a period of more than 20 years. They take the position that the rights of seniority are valuable contractual or vested property rights which may be protected by injunction.

The alleged seniority rights here sought to be protected are attached to that branch of the transportation employment commonly referred to as pool freight service, which consists of extra or irregular runs from a designated point on the division to another. It is one of the two distinct classes of train service on the division. The other is commonly called regular or local assignment.

Plaintiffs take the position that these two types of service are wholly separate and distinct, and that each constitutes an independent class of employment for the purpose of the application of the seniority rule. This, they say, has grown out of a contractual relationship of long standing between the union and the railroad, of which the plaintiffs are the beneficiaries.

It is alleged that the rule or order complained of would permit employees who are senior to plaintiffs in point of service on the entire division to take these pool runs and deprive plaintiffs of their superior right thereto acquired by virtue of their own seniority in such service.

. It further appears that plaintiffs' remedy as provided by the constitution and statutes of the Order of Railway Conductors has been fully exhausted; the question here under consideration has been finally decided against them by the duly constituted authority of the order in a proceeding referred to in the record as case No. 32. That proceeding and the conclusion therein reached fulfills the obligation of plaintiffs to first seek an adjustment of their grievance through the channels provided by the union before proceeding to the courts. See Lockwood v. Chitwood, 185 Okla. 44, 89 P. 2d 951, and authorities there cited.

The evidence shows that the western division of the Chicago, Rock Island & Pacific Railway Company extends from Booneville, Ark., to Sayre, Okla. For many years the railroad by contractual agreement with the union has recognized the seniority rule among its conductors and other trainmen. The rule extends over the entire division aforesaid, and the nature thereof as applied to trainmen is so well and generally understood that we deem it sufficient here merely to say that the employee, otherwise qualified, standing first in point of continuous service is entitled to his choice of runs, or train assignments, as such assignments are arranged and promulgated by the parties having that authority.

It is further shown that the railroad in question was constructed some time prior to 1903 by the Choctaw, Oklahoma & Gulf Railroad Company, and was operated by that company until 1904, when it was taken over by the Rock Island, the present owner.

Early in the history of the road the managing officers thereof and the trainmen recognized as existing on the division the two types of service above mentioned. By rule issued by the general superintendent in 1903, oldest conductors and brakemen were assigned to regular runs, and those next in seniority were to run on a schedule of first in first out, which was to be termed as pool service.

The first permanent assignments of trainmen to pool service came in 1907, when the division superintendent issued an order providing in part as follows:

"All Conductors and Brakemen:

"A permanent assignment of conductors and brakemen in pool service out of Shawnee, divided into two pools, one to work east from Shawnee and the other to work west from Shawnee, exclusively has been decided upon. . . .

"This assignment will not in any way effect the seniority of trainmen, in so far as their being entitled to bid in any of the preferred runs between Booneville and Sayre, according to their seniority, etc."

And in the same order applications of conductors and brakemen for such service were requested.

Subsequently, and the record does not disclose when or by what authority, like pool service grew up in four districts or subdivisions of the western division. They were Booneville to Haileyville; Haileyville to Shawnee; Shawnee to El Reno; El Reno to Sayre. It appears that in each of these districts a seniority rule grew up and was recognized and observed by the common consent of the trainmen so employed and the company. There is no evidence of an express contract to that effect between the bargaining agency of the Order of Railway Conductors and the railway company.

This seniority rule in pool service has been maintained up to the time of the commencement of this action.

The record further reveals that the contracts entered into from time to time between the union and the railroad carried the provision that conductors may not be transferred from one division to another to the detriment of the seniority rights of the conductors employed on the latter division; and said contracts also provided that the existing seniority rights of trainmen on any division or district should not be affected by the terms of the particular contract.

Plaintiffs take the position that by reason of the foregoing circumstances the conductors in the respective districts or subdivisions were entitled as beneficiaries under contractual relationship between the union and the company to enjoy exclusive seniority rights in such districts over all other conductors on the western division; or, if such right did not arise as a result of express contract, it had been recognized and respected by the union and the company throughout a period of over 30 years, and that by reason thereof the union and the company are estopped to deny that right or to abrogate the same by rule such as the one here in question or by contract of any kind not made necessary for the proper operation of the business of the company.

We may say here that the evidence shows that the rule or order aforesaid was not promulgated for reasons of operating necessity, but was issued wholly at the request of the Order of Railway Conductors after the question here under consideration had been fully decided in case No. 32, as stated above.

The evidence also shows that if this rule or order is placed in operation, the plaintiffs will thereby be deprived of their so-called seniority as prevailing in the pool service.

The basic reason for the assumption of equity jurisdiction in cases of this character is to protect the rights of employees growing out of contractual relationship. The courts will ordinarily deny relief unless the civil, property, or contractual rights of the complaining party have been illegally, fraudulently, or arbitrarily denied by the union; the interpretation of rules fixing seniority rights is for the duly constituted au-

thorities of the union in the first instance, and their interpretation will not be interfered with by the courts if it appears that the same is reasonable and arrived at in good faith. 63 C. J. 693, § 66.

The point of first consideration in cases involving the question of seniority standing is, that in an industry operating under a system of collective bargaining with its employees the rights of seniority enjoyed by such employees arise wholly from the contracts entered into between the bargaining agency of the union and the employing company, and the union's rules and usages with reference to such rights existing at the time of the contract. This is the generally recognized rule. Norfolk & W. R. Co. v. Harris, 260 Ky. 132, 84 S. W. 2d 69; Ryan v. New York Central R. Co., 267 Mich. 202, 255 N. W. 365.

In the Kentucky case, above, we find the following statement by the court:

"The regulations of the brotherhood and its agreement with the railway company are the sources of ascertainment of the rights of the individual employees who are members of the brotherhood and the usage upon which the individual contract of employment is based."

And in the Michigan case the court held that the employee's right to seniority in service did not arise out of his employment by the railroad company "except as provided for in the contracts entered into and the rules adopted by the company relating thereto." The contracts referred to were those between the union and the company, and the rules there mentioned were the rules of the union as adopted in the contract.

In the instant case the union at no time adopted rules and regulations concerning exclusive seniority rights in pool service. There is no evidence that the union, as such, recognized the plan adopted in such service. It is clear that the promotions and schedules there made and inaugurated were due wholly to the action of the company's superintendent. The rules adopted by the union extended over the entire division, and its various contracts with the company, so far as those rules were concerned, merely constituted contractual assent on the part of the company that the same be respected and enforced over the division.

Trainmen senior to those in pool service cannot be estopped by the independent action of the division superintendent and the pool employees. The scheduling or assignment of runs of junior trainmen is a matter with which the senior trainmen need not concern themselves until they so desire. If a grievance in this respect arises, the remedy is first through the proper channels of the trade union. Those standing in senior rank are not to be barred by lapse of time or silent acquiescence from asserting their seniority rights to assignments as they are duly created. A contrary view would result in the destruction of all the rights and privileges incident to seniority.

In the instant case there were no seniority rights violated by the order under attack. Plaintiffs' rights were only those recognized by the rules of the union as assented to by the company under due contractual relationship.

As said above, the rights of seniority arise wholly from the union's contract with the company. Such contract merely guarantees the continued recognition of those rights, and they inure to the benefit of the employees. Seniority in train service means merely the privilege of choosing runs or assignments of service as they are arranged by proper authority, but does not guarantee that an assignment when chosen should forever remain inviolate as a vested property right.

Here assignments were duly arranged in the pool service and open to bid or selection by those trainmen standing in senior rank. The rights of plaintiffs were merely that of all other trainmen working on the division.

Since plaintiffs' case must fall for want of fundamental basis upon which

to stand, contractual right, there is no necessity for discussing other grounds urged in support of the judgment.

Further, we find no authorities upholding seniority without a basic contractual relationship. We therefore refrain from discussing the cases cited by plaintiffs. They are not in point for that particular reason.

The trial court held that by reason of long continued practice the plaintiffs had established seniority rights in pool service. This was error. Such rights cannot be so acquired.

The judgment is reversed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. DAVISON, J., dissents.

DAVISON, J. (dissenting). I am unable to concur in the opinion of the majority of my associates.

I agree with the statement in said opinion that the basic reason for the assumption of equity jurisdiction in cases of this character is to protect the rights growing out of contractual relationship, but the rule formulated in the syllabus does not logically follow therefrom and is without foundation either in reason or legal precedent. The fundamental fallacy in it as an abstract proposition is its failure to recognize the true basis or source of employees' seniority rights. In declaring that in an industry operating under a system of collective bargaining, seniority rights of employees ". . . arise wholly from express contractual relationship between the employing company and the bargaining agency of the trade union, . . ." the majority opinion erroneously excludes establishment or creation of such rights by implied contract between the employing company and the employees themselves. The latter was the basis of the trial court's judgment in accord with its finding that by long continued practice conductors and brakemen have been allowed to and have earned seniority rights in pool freight

service in each of the four districts or subdivisions of the western division of the defendant railway company, extending from Booneville, Ark., to Sayre, Okla. (as specifically defined in the majority opinion). The majority opinion does not hold that this express finding is contrary to or against the weight of the evidence. It admits that, according to the evidence, "in each of these districts a seniority rule grew up and was recognized and observed by the common consent of the trainmen so employed and the company." Nor does it dispute the plaintiffs' claim that said rule, upon whose recognition, observance, and operation the complaining employees' rights are based, is one of 30 years' standing. It is revealed by the division superintendent's order of the year 1907, quoted therein, that Shawnee has been a terminal point in pool freight service for at least that period, but no particular significance is attached to this point apparently, because, as is stated in said opinion:

". . . There is no evidence of an express contract to that effect (i.e., that trainmen shall have seniority rights in pool freight service) between the bargaining agency of the Order of Railway Conductors and the railway company."

While it is true that the evidence reveals no such express contract, nor an express provision with reference to pool seniority in the contracts of employment between the railway company and its trainmen, yet this in my opinion is by no means conclusive as to the existence of said employees' right to such seniority. Such a right may arise from or be created by implied, as well as by express, contract. It seems to have been assumed at the trial there is no specific contention to the contrary in the briefs, and under the rules governing this court's consideration of the trial court's findings and judgment on appeal, I think we may presume that, at the time the trainmen in question were employed by the defendant railway company, the rule recognizing pool seniority in freight service throughout the four districts between Booneville, Haileyville, Shawnee, El Reno, and Sayre on the western di-

vision of said company's road was an established custom or usage within said defendant's organization. If this is true, as the trial court's findings indicate, then it became an implied part of said company's employment contracts with its trainmen of that area. It has often been held that the various rules of an employer, of which the employees have knowledge when they enter his employment, form a part of such contracts. Williston on Contracts (Rev. Ed.) vol. 1, § 39; vol. 4, § 1027, p. 2847. And where the rule is as generally, notoriously, and universally adhered to as the seniority rule in question appears to have been upon the western division of the defendant company's line, the trainmen employed on that division must be presumed to have known of it without proof of such actual knowledge at the time they were employed. See 25 C. J. S. pp. 80-82, 88, §§ 8, 9, under the title of "Custom and Usages." While counsel for the plaintiffs cite none, and my search has revealed no reported case in which seniority rights have been upheld on the basis of implied contract between individual employees and their employer, such a possibility has been recognized at least by inference in several cases. (See, for instance, Aulich et al. v. Craigmyle et al., 248 Ky. 676, 59 S. W. 2d 560, in which the seniority rule relied on therein appears not to have been of general and universal acceptance by both the employer and his employees, but its observance seems to have been purely discretionary on the part of the employer; Gordon v. Hawkins, (Tex. Civ. App.) 66 S. W. 2d 432, 433; Ryan v. New York Cent. R. Co., 267 Mich. 202, 255 N. W. 365; McCoy v. St. Joseph Belt Ry. Co., 229 Mo. App. 506, 77 S. W. 2d 175.) There are many reported cases, however, in which other rights with reference to personal service or employment relationships have been upheld (see cases cited in the notes to sections 39 and 1027, Williston on Contracts, supra; sections 19 i., 27 e., 25 C.J.S. 105, 116; §§ 29 and 50, 17 C. J. 466, 486), and this court, in Lockwood et al. v. Chitwood, 185 Okla. 44, 89 P. 2d

951, gave effect to usage and custom in upholding the claimed right of a local committee of the Order of Railway Conductors to continue assigning or rearranging the runs of conductors on the O. C. A. & A. Railroad Company, after it had exercised that, power or function over a period of years with the assent of said company and its employees. Indeed there seems to be no valid reason why seniority rights, like other rights of employees, may not be created by a long continued practice or course of dealing, and in my opinion, if the legal principles to which I have alluded were properly applied to the present case, the plaintiffs must be deemed to have valuable contractual and property rights to their seniority in the particular class of the defendant company's service in which they are employed. With reference to the character of such rights and equitable jurisdiction to protect them, see Grand International Brotherhood of Locomotive Engineers et al. v. Mills et al., 43 Ariz. 379, 31 P. 2d 971, 979.

In addition to the first of defendants' propositions, which in the majority opinion is accorded controlling importance, the defendants urge three other propositions for reversal of the trial court's judgment. One of these concerns the obligation of a member of a voluntary unincorporated association or trade union to exhaust the remedy provided by the constitution, rules, and bylaws of that organization for the redress of his grievances before attempting to invoke the jurisdiction of a court of equity to act in a controversy involving same. This proposition is answered in plaintiffs' favor by the majority opinion and requires no further treatment herein. Under their other two propositions the defendants argue that even though the plaintiffs were not members of the Order of Railway Conductors, they would be bound by its rules and regulations and the decision of said order's tribunal in case No. 32; and they seek application to the present case of the doctrine that a court of equity will not interfere with the administration or en-

forcement of such an association's rules or orders, unless the action complained of is arbitrary, capricious, or in excess of the jurisdiction thereby sought to be exercised.

As I view the fundamental issues involved herein, it is unnecessary to answer the above contentions separately. The plaintiffs do not regard their membership in the Order of Railway Conductors as important. They seem to recognize that if they had accepted their contracts of employment with the defendant railroad company under a seniority rule adopted by said company at the instance of said union or bargaining agency, they would be bound thereby, whether they were members of said association or not. They do urgently insist, however, that as this was not the situation, and they have never ratified, adopted, or acquiesced in such a rule, they cannot be deprived of their accrued seniority rights in pool freight service by or at the instance of said agency. A review of the authorities discloses this position to be supported by the weight of sound judicial precedent. Thus, in Young v. Canadian N. R. Co., 38 Manitoba L. R. 283, 4 D. L. R. 452, the court said:

"There is no magic in the term 'collective bargaining' so that unless a person can show privity by representation (either authorized or adopted) or by statute, there is no principle that I know of by which he can claim it. . . ."

And in Panhandle & S. F. Ry. Co. v. Wilson (Tex. Civ. App.) 55 S. W. 2d 216, the court said:

"The rule is that individual members of a labor union are not bound by contracts between the union and the employers unless such agreements are ratified by the members of the union as individuals. . . ."

The proposition that rules and regulations adopted by an employer at the instance of a trade or labor union are not binding upon his employees merely because of their membership in the union is too well settled to be successfully challenged. In addition to the above cases, see Hudson v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98, and other authorities cited in the notes to sections 102 and 112, under the title of "Labor," in vol. 31 of Am. Jur.; and the following annotations: 33 A. L. R. 322, 95 A. L. R. 10, 32-43.

The majority opinion reveals that the union in the present case "at no time adopted rules and regulations concerning exclusive seniority rights in pool service"; and it is also significant that though there "is no evidence that the union, as such, recognized the plan adopted in such service," it never promulgated any rule, regulation or by-law, or made any agreement either with the Brotherhood of Railway Trainmen or with the defendant railway company in derogation or in conflict with such rights until the agreement entered into on February 21, 1938, between the Order of Railway Conductors and the defendant railway company. The defendants do not claim that by express adoption thereof or tacit acquiescence therein, plaintiff trainmen and others similarly situated have subjected themselves to any such rule or agreement. In the answer of the defendant union and its officials, A. B. Pearson and J. A. Phillips, it is revealed that various attempts were made before the year 1938 to put into effect on the railroad division involved herein the decision in case No. 32, but such attempts met with successful opposition by trainmen of that division whose seniority was based upon pool freight service. The only basis alleged by said defendants for their contention that plaintiffs are bound by any such rule, agreement, or decision is their membership in the union and the claimed agency of said union for them in such matters. The unsoundness of this position is demonstrated by the authorities I have cited, in view of the fact that the plaintiff employees are not shown to have ever specifically authorized said bargaining agency to settle or in any way modify or affect their seniority rights in the particular service involved herein.

Preceding defendants' argument under the propositions I have mentioned, there are statements in their initial brief suggesting that there is no reasonable probability of a real injury to the plaintiffs by reason of the railway company's placing into effect the agreement of February 21, 1938. In my opinion, the plaintiffs demonstrate quite conclusively by the evidence cited in their answer brief that such will be the effect of the action which the trial court enjoined, and defendants do not directly refute this in their reply brief. They rest their case therein upon the conclusion that "where the O. R. C. (Order of Railway Conductors) as a general policy affecting the welfare of the Order itself, and the great majority of the employees, in a given territory, negotiates a contract with the employing railroad company, or procures a change in a contract, same is binding upon individual conductors, even though the result is to diminish the income of the individual member or members affected, or even deprive them of jobs." I cannot concur in such a proposition where the operation of the contract will bring about such losses to employees by destroying seniority rights which accrued to them before the contract was entered into, and said employees have never directly assented to it, either expressly or impliedly. The opinion in Grand International Brotherhood of Locomotive Engineers et al. v. Marshall et al. (Tex. Civ. App.) 119 S. W. 2d 908, 146 S. W. 2d 411, which is the only case involving seniority rights that is cited in support of defendants' quoted proposition, contains certain statements which, when considered apart from the rest of the opinion, seem to support the syllabus of the majority opinion herein, but these statements must be considered in the light of the particular facts of that case. An analysis of these reveals no other basis for the seniority rights involved therein except certain rules of the employees' bargaining agency *which had been adopted by the employer and under which his workers had been employed.* It seems that there, contrary to the situation here, no seniority rights had ever been established in the employment involved until the adoption of the brotherhood's rules.

As noted in the majority opinion, the defendant railroad company attempted to place its agreement with the defendant bargaining agency into effect not ". . . for reasons of operating necessity, but . . . wholly at the request of the Order Of Railway Conductors. . . ." In view of the record in this case and the governing legal principles to which I have alluded, it was beyond the jurisdiction of said order to enforce such an agreement, and the defendant company's attempt to enforce it is an arbitrary and capricious, yet real, threat to the substantial property rights of the plaintiff trainmen and others similarly situated. Said company's trainmaster, C. C. Fertig, summed up the considerations attending his issuance of the bulletin advertising jobs in pool service to comply with said agreement in the following testimony:

"As I previously stated, I have been constantly hounded with letters after letters, with complaints after complaints from five local chairmen asking me to comply with article 19 of both contracts, and I want the cat off my back, and I advertised it to get it before the court, so they would relieve me of the pressure being brought on me by these organizations or their representatives. That is why I advertised the jobs, to stop this constant flow of criticism and complaints. . . .

". . . it . . . don't make ten cents worth of difference to the railroad company which way this court decides."

In accord with the views expressed herein, it is my opinion that the judgment of the trial court should have been affirmed. I therefore respectfully dissent to the majority opinion promulgated in this cause.