## Day v. Louisville & N. R. Co. et al.

Nov. 9, 1943.

David R. Castleman and Charlton B. Thompson for appellant.

H. T. Lively, J. P. Hamilton and James P. Helm, Jr., for appellee Louisville & N. R. Co.

Shumate & Shumate and Richard P. Dietzman for other appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

The decision involves the seniority rights of conductors of the Louisville & Nashville Railroad Company in "helper service" between the city of Ravenna, Kentucky, and the Patio railroad yards adjacent to the city of Winchester. Because of heavy loads and steep grades, engine service is sometimes required to be doubled, which likewise entails the use of extra crews in conformity with agreements between the railroad company and the four brotherhoods. A part of the trackage in question was constructed after the acquisition by the company of the Louisville & Atlantic Railroad Company in the year 1915 and the Lexington & Eastern Railroad Company previous to that date. The remainder of the trackage, which is a very small portion of the whole, is part of the main line of the Louisville & Nashville running from Cincinnati, Ohio, to Atlanta, Georgia, and on the Cincinnati division of the main line which commences at Cincinnati and ends at Corbin, Kentucky.

A railroad division is a unit of management established for convenience in operation and is not necessarily coincident with a seniority division, because it is sometimes necessary for trains and their crews to travel over more than one division to complete a run. In such instances, it is necessary to separate a seniority division from an operating division. Preference in respect to runs is accorded to engineers, firemen, conductors, and trainmen in each division in accordance with the length of service therein, and in interdivisional runs is accorded to these workmen on a basis known in railroad parlance as mileage percentage, the meaning of which term it is unnecessary for us to consider because it is not applicable to the situation giving rise to this controversy. Preferences in divisions are established by the railroad company duly advertising the fact that a vacancy exists, whereupon, before the date recited in the advertisement, the senior eligible employee applying therefor is assigned to the specific service. Seniority rights are zealously guarded by those entitled thereto because of convenience in respect to equipment, suitable working hours, and perhaps the possibility of desirable overtime. Previous to the year 1919, seniority rights in respect to certain positions were voluntarily recognized by the railroad company, but in October of that year, they were accorded to all skilled laborers in the employ of the company by virtue of contracts entered into between the railroad and the various brotherhoods, which are the bargaining agents for their members. One of the contracts of 1919 was with the Brotherhood of Railroad Conductors and subject to slight amendments remained in effect until February 1, 1927, when a new contract was entered into between the brotherhood and the company, which is identical with the previous contract in all respects under consideration in this case. The 1927 contract is now in effect. These contracts safeguard the seniority rights within respective divisions but themselves do not stipulate the territory which shall be included in a division. The agreements in that respect were separately concluded by the parties and are evidenced by an exchange of letters. The first agreement with which we are concerned was in respect to the service to be rendered by employees of the Cincinnati Division and those of the Eastern Kentucky Division and was concluded September 14, 1919, but did not affect conductors until August 10, 1923, when it was agreed between the

railroad and the brotherhoods that conductors would be used in place of trainmen in crews in helper service. The agreement provided that only men holding seniority rights in the Eastern Kentucky Division were to be used for manning freight trains over the trackage acquired from the L. & E., the L. & A., and the newly constructed tracks in that general territory; except, the men of the Cincinnati Division would operate the freight trains running to and from Ravenna and the Patio yards, and from Ravenna to such points on the Cincinnati Division as might be found most convenient or desirable so far as the railroad is concerned. Pursuant to that agreement, the railroad operated both regular and helper freight service between Ravenna and the Patio yards with men holding seniority rights in the Cincinnati Division for a period of almost 22 years, to-wit, from November 1, 1919, to August 11, 1941. In those intervening years, several requests of the general council of the Brotherhood of Railroad Conductors that the freight service between Ravenna and Patio be turned over to the employees of the Eastern Kentucky Division were rejected by the railroad company, but finally the company agreed that commencing August 11, 1941 the service would be transferred as requested. The appellant Day, a conductor in the service of the Cincinnati Division, by seniority and preference had acquired the right to be placed in the Ravenna-Patio helper service so long as it was being operated by the Cincinnati Division; and he was so employed at the time the railroad company agreed with the brotherhood to transfer the service to the Eastern Kentucky Division. The personnel of the Eastern Kentucky Division by reason of length of service was such that appellant was outranked by other employees and was no longer eligible to bid in the Ravenna-Patio run. Conceiving that he had acquired an individual vested right to continue the run in question, he brought this suit seeking to enforce such rights. He relies solely on the decision of this court in Piercy v. Louisville & N. R. Co., 198 Ky. 477, 248 S. W. 1042, 1044, 33 A. L. R. 322.

In that case one Stanfill by reason of seniority was assigned to a through fast daylight train running between Cincinnati, Ohio and Knoxville, Tennessee. The railroad company at the instance of the Brotherhood of Conductors, of which Stanfill was a member, entered an order changing rest periods so that layovers would be on the Knoxville end, whereas, previously they had been

on the Cincinnati end. The effect of the order was to require Stanfill to engage in the service on a less desirable run and to permit a conductor more suitably domiciled to operate the more desirable run, although outranked in seniority by Stanfill. The court held that such an order was an abrogation of Stanfill's seniority rights as acquired under a provision of a contract of 1920, safeguarding seniority rights in interdivisional runs. Stanfill was not transferred to another division nor was there any change in the operation of the train in respect to divisions. The only effect of the change was to deny him the privilege his seniority demanded under the contract between the brotherhood and the railroad company. The decision in that case was strictly an interpretation of a clause in the 1927 contract which reads: "Conductors on districts involved (interdivisional runs) will exercise seniority on the mileage percentage basis, based on miles run over each seniority district."

The writer of that opinion confessed the court's "inability to see or understand, with any degree of clearness or accuracy, exactly what this language does mean, but that it does contemplate there shall be some sort of right of seniority on these interdivision runs there can be no question." Because of the ambiguity of the language of that provision of the contract, the court gave it the meaning that the parties to the contract had contemporaneously placed upon it in operating and acting under it; and, since the order Stanfill objected to was not in keeping with that construction of the provision in question, the court held that he was entitled to the relief sought and that the brotherhood was without power to waive his personal right acquired under a general provision of the contract. But the opinion did not hold that the brotherhood and the railroad company did not have the right to amend the contract in respect to changing the operation of trains from one division to another. Indeed, it seems to us the right of collective bargaining would be a myth if a contract resulting therefrom could be set aside by an individual member of the brotherhood who considered himself aggrieved by the terms of the contract itself. If the brotherhood has authority to enter into a binding contract in respect to divisional operation of trains in the first instance, it has the right to amend the contract, even if such a change necessitates the placing of a conductor under the operation of a different division, provided such conductor

is accorded the seniority rights to which he becomes entitled in the division in which he is placed. Donovan v. Travers, 285 Mass. 167, 188 N. E. 705. The distinction to be made in the Piercy case and the instant case is that, in the former, Stanfill was denied rights accorded him under the contract respecting operating divisions, although there was no change in respect to the division operating under the contract; whereas, in this case, Day has not been denied the rights accorded him under the contract respecting operating divisions as amended. The opinion in the Piercy case inferentially upheld the validity of the contract entered into between the carrier and the brotherhood by requiring the carrier to comply therewith. If the carrier is bound by such contract, it follows that an employee is bound in like manner, unless, as is contended, the contract must be set aside because the brotherhood, in granting the specific authority to its representative who executed the contract, did not follow the procedure provided by the bylaws of the brotherhood.

One becoming a member of a labor organization does so for the benefit accorded him in pursuance of the privilege of collective bargaining. The organization itself designates the agents entrusted with the authority to bind the organization and its members. As between themselves, they may agree as to the procedure to be followed in authorizing the agents to agree to specific contracts; but as between them and the employer, the individual members of the organization may not question the specific authority of their own bargaining agents. After a contract has been entered into, it is not within the province of the Court to determine that the procedure agreed upon among the members of the brotherhood, in respect to specific authority of the bargaining agent, has been followed. If an agreement entered into by the designated bargaining agent may be set aside by individual members of the organization, the representatives of the railroad could never be sure of the binding effect of any contract entered into with the brotherhood. The record shows without contradiction that the Louisville & Nashville Railroad Company, in entering into the agreement in dispute, dealt with the duly constituted agents of the brotherhood. There is no evidence that the agreement was not entered into in good faith, and the Court will not interfere with the decision of the duly constituted authorities of the order in respect to the procedure prescribed by the brotherhood with reference

to specific authority. By joining the brotherhood, appellant designated the bargaining agent of the brotherhood his individual representative, and, unless he has repudiated that representation by resigning from the organization, he must abide by the act of such representative. The Railway Labor Act, 45 U. S. C. A. sec. 152 et seq., provides: ''All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized solely to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.''

That provision of the Railway Labor Act makes it mandatory for the carrier to deal with the bargaining agent designated by the brotherhood; and, in doing so, it has the right to assume that he has been properly instructed without the requirement of investigating the specific authority granted by the order. In construing the section of the Railway Labor Act, supra, the Eighth Circuit Court of Appeals of the United States said:

''It appears without dispute that the defendants have dealt with the representative of the Order in effecting the collectively bargained agreements, and they cannot be required to examine into the specific authority granted the representative of the Order. Under the laws of the Order the decision of the President on appeal was binding, it was apparently made in good faith, and courts will not ordinarily interfere with the decisions of the tribunals of a voluntary unincorporated labor organization. The court cannot substitute its judgment for that of the President of the Order. George T. Ross Lodge No. 831 v. Brotherhood of Railroad Trainmen, 191 Minn. 373, 254 N. W. 590; Louisville & N. R. Co. v. Miller, 219 Ind. 389, 38 N. E. (2d) 239, [142 A. L. R. 1050]; Ryan v. New York Cent. R. Co., 267 Mich. 202, 255 N. W. 365; Order of Railway Conductors of America v. Shaw, 189 Okl. 665, 119 P. (2d) 549.

''While we think it is not within the province of the court to determine the regularity of the procedure which prompted the representative of the Order to enter into the agreements involved, yet a study of the record convinces that the procedure was that prescribed by the laws of the Order and, hence, the decision of the President was valid and binding on the plaintiffs as well as on the members of Division No. 566.'' Division 525,

686

Order of Railway Conductors of America v. Gorman, 8 Cir., 133 F. (2d) 273, 278.

Such being our view, it is unnecessary for us to determine whether the brotherhood complied with the procedure set out by its bylaws in granting authority to the bargaining agent to enter into the contract complained of.

The judgment is affirmed.