# Langhurst et al. v. The Pittsburgh and Lake Erie Railroad Company et al.

Before Patterson, Kennedy and Weiss, JJ.

*T. Robert Brennan*, for plaintiffs.

*Nicholas Unkovic, James R. Orr, John G. Wayman, Reed, Smith, Shaw & McClay*, and *Bert H. Smyers*, for defendants.

WEISS, J., August 9, 1949.—Plaintiffs in this action filed a bill in equity seeking to restrain defendants from putting into effect an agreement between the Pittsburgh and Lake Erie Railroad Company and System Federation No. 103, A. F. L., boiler makers, sheet metal workers, machinists, blacksmiths and firemen, and oilers (parent union), concerning the consolidation of the above forces in the locomotive department at McKees Rocks, Pa., into one seniority district and roster.

Both defendants filed preliminary objections to the bill, maintaining that the facts set forth in the bill are insufficient to warrant equitable relief and that plaintiffs have an adequate remedy at law.

The parties herein filed a præcipe placing this matter upon the general argument list and the matter comes now for disposition before this court en banc.

A review of the pleadings and briefs discloses the following:

The Pittsburgh & Lake Erie Railroad Company, hereinafter sometimes referred to as the "company" or the "employer" for defendant railroad, is a corporation engaged in the business of transportation of passengers and freight for hire, maintaining and servicing rolling stock and equipment used in connection with this business.

It is part of the New York Central System and is engaged in interstate commerce and subject to regulations by the ICC and other appropriate Federal agencies.

The employes of defendant railroad, including plaintiffs in this case, and other employes of the New York Central System engaged in certain crafts are now, and have been for many years, represented for collective bargaining by a collective bargaining agency known as the New York Central System and Allied Lines System, Federation No. 103, of the Railway Employees Department of the American Federation of Labor, an unincorporated labor association. The crafts represented include boiler makers, sheet metal workers, machinists, blacksmiths and firemen, and oilers. System Federation No. 103 was duly certified by the National Mediation Board to represent these crafts on the above-mentioned railroads for purposes of collective bargaining.

The company and the union for many years have had agreements providing for seniority rights for employes at different places in the system and among the various crafts represented. Since about March 1926 these agreements provided for separate seniority lists or rosters for employes employed at the McKees Rocks locomotive shops, commonly called the "back shop", which primarily handles heavy locomotive re-

pairs, and at the McKees Rocks engine house, commonly called the "round house", which maintains running repairs on locomotives.

On or about February 17, 1949, for economic reasons which are not stated in the complaint and which are not material to the action of this case, the system federation and defendant railroad entered into an agreement consolidating or, as plaintiffs phrase it, "dovetailing" the seniority rosters which prior to that time had been maintained separately for the back shop and round house at McKees Rocks.

Although the exact result is not indicated in the bill of complaint, some of the plaintiffs apparently will have a lower seniority standing on the consolidated roster than they would have had under the previous separate rosters, although in the consolidation the same tests were applied to all employes without regard to their union affiliation, color, creed, or any other consideration other than the service and relative skills or crafts.

Plaintiffs, feeling themselves aggrieved by the new contractural arrangements between the union which represents them and their employer, filed a bill of complaint asking that this court restrain the parties to the agreement from placing it in effect, and suggesting a different arrangement which plaintiffs presumably feel would be more advantageous to them.

Within the period provided by law, defendant railroad filed preliminary objections to the complaint and a short time thereafter defendant System Federation No. 103 and its executive board member, J. W. Penisch, Jr., filed preliminary objections.

### Issue Involved

Where the New York Central System and Allied Lines System, Federation No. 103, of the Railway Employees Department of the American Federation of

Labor, a duly certified collective bargaining agent representing the employes group or unit, makes an agreement with an *employer* establishing seniority rights and modifying the *seniority provisions of prior contracts*, can persons whose seniority right are adversely affected obtain injunctive relief?

## Argument

This is a rather novel proceeding filed by plaintiffs, most of whom are members of the local labor union, part of the System Federation No. 103, which was its duly certified bargaining agent, against the system federation and the Pittsburgh and Lake Erie Railroad Company, hereinafter called the "company", for brevity, and the other defendant, hereinafter called system federation.

It is clear to this court that the agreement entered into between system federation and the company does result in some diminution of the seniority rights of each of the plaintiffs. Plaintiffs claim in their bill that such an agreement is unlawful and that they are entitled to the extraordinary relief of injunction to prevent the company and the system federation from placing it in effect.

We question the authority of plaintiffs to challenge *its* duly certified bargaining agent under existing agreements in effect. Collective bargaining for wages, hours of work and working conditions of employes of an interstate carrier by railroad, such as defendant, is governed by the Federal Railway Labor Act of May 20, 1926, 44 Stat. at L. 577, as amended, 45 USC §§151 et seq. Under the terms of that act it is well settled that when a collective bargaining represenative has been designated for a group or craft or class, the railroad employer is under a statutory duty to bargain with the repesentative and no other concerning wages, hours and working conditions of all

employes in that group, craft or class whether union members or not: Railway Labor Act, supra. sec. 2.

We find that matter adjudicated by the court in the case of Virginian Railway Compony v. System Federation No. 40, 300 U. S. 515 (1937):

"The obligation imposed on the employer by §2, Ninth, to treat with the true representative of the employees as designated by the Mediation Board, when read in the light of the declared purposes of the Act, and of the provisions of §2, Third and Fourth, giving to the employees the right to organize and bargain collectively through the representative of their own selection *is exclusive. It imposes the affirmative duty to treat only with the true representative, and hence the negative duty to treat with no other.*" (Italics supplied.)

Although it is obvious that there could as a practical matter be no individual bargain on a subject such as seniority, which is by its nature a group or collective right, it is equally clear that under the law the collective agreement on such matters is paramount, and supersedes any individual arrangements.

Also cited was the case of Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U. S. 342.

System Federation No. 103, with whom defendant railroad entered into the disputed agreement of February 17, 1949, was duly certified by the National Mediation Board as the collective bargaining representative of the group, class or craft of which most of plaintiffs are members, said certification being a matter of public record.

Defendant railroad, in negotiating and entering into the agreement, was doing what it was required by law to do.

We now consider the crux of this injunctive proceeding. We know that seniority rights of plaintiffs are

affected by the agreement. Does this acknowledged fact invalidate the agreement and entitle plaintiffs to injunctive relief?

We believe not.

This principle (change in seniority listing) has been consistently upheld as a matter of law without exception in the various jurisdictions throughout the land.

A case involving a remarkably similar set of facts was decided by the New Jersey Chancery Court on September 14, 1948. In Walker v. Pennsylvania-Reading Seashore Lines, 142 N. J. Eq. 588, 61 A. (2d) 453, the court said:

" . . . The defendant railroad company expressed its willingness to abide by the conclusion of the bargaining agent on the question of seniority, provided that the same treatment was accorded to all employees regardless of affiliations, race, etc. It was legally entitled to deal with such bargaining agent without a separate investigation of his authority. As a matter of fact, had it refused to accept or recognize the bargaining agent and its proposed changes it made itself subject to the penal provisions of the Railway Labor Act.

"The Court is not here called upon to pass judgment upon the respective merits of the consolidated seniority roster and the adjustable seniority roster. This it could not do in any event, provided that there was a compliance with the contractual and statutory provisions.

" . . . Although the right of seniority is a recognizable property right, such a right is not inherent to employment. It must arise either from a statute or from a contract between the employer and employee.

" . . . A collective bargaining agreement does not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract beyond its life, when it is terminated or modified in in accordance with the terms thereof. . . .

"The seniority rights of the complainants here arose as a result of the contract with the Pennsylvania-Reading Seashore Lines which was entered into by their duly chosen and authorized representative, i.e., the Brotherhood of Locomotive Firemen and Enginemen. Such seniority rights and the employment contract which resulted from the bargaining of their collective agent or representative are subject to the provisions of the Railway Labor Act (45 U. S. C. A. §§151 et seq.) This being so, it follows that such seniority rights can rise no higher than the contract which gave them birth, and the statute regulating contracts of a similar nature, and any changes therein must be made not only in accordance with the provisions of such contract, but with the provisions of the Railway Labor Act as well.

"A contract entered into under the Railway Labor Act is subject to revision, change, amendment and recission provided compliance with the terms thereof and the said Act are had."

The rule announced by the Supreme Court of Pennsylvania is to the same effect. In Madera v. Monongahela Railway Company 356 Pa. 460 (1947) the court said:

". . . In Polanskey v. Monongahela Rwy. Co., 342 Pa. 188, 19 A. 2d 377, we observed that 'it has been held that an employee "has no inherent right to seniority in service . . . except as provided for in the contracts entered into and the rules adopted by the company relating thereto": Ryan v. New York Central R. Co., 267 Mich. 202, 255 N. W. 365.' . . ."

"In the instant case, the appellant rests upon no right created by statute, but solely upon a collective bargaining agreement, made between the chosen representative of the workers and the employer. The fact that he was not a member of the union labor organization which lawfully bargained for him and for all other

employees of the company neither strengthens nor weakens his position. His individual seniority rights were both created and limited by the bargain which was made for and was binding upon all employees for whom it was made": Elder v. New York Central R. Co., 152 F. (2d) 361, 364 (C. C. A. 6, 1945).

The rule is well stated in Edlestein v. Duluth Missabe & Iron Range Ry. Co., 225 Minn. 508, 31 N. W. (2d) 465 (1948), where the court said:

"In cases involving rights arising under a federal statute, the decisions of the Supreme Court of the United States are controlling. Glover v. Minneapolis Building Trades Council, 215 Minn. 533, 10 N. W. (2d) 481, 147 A. L. R. 1071. So it is here, because the the instant case involves questions arising under a federal statute, the Railway Labor Act. The Railway Labor Act (45 U. S. C. A. §§151, 152) vests in an employes' statutory bargaining representative exclusive authority to contract prospectively with their railroad employer with reference to rates of pay, rules, and working conditions. Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U. S. 711, 65 S. Ct. 1282, 89 L. ed. 1886, 327 U. S. 661, 66 S. Ct. 721, 90 L. ed. 928.

"Authority of an employes' statutory bargaining representative to enter into contracts concerning rates of pay, rules, and working conditions, includes as incidental thereto authority to contract prospectively with the railroad with reference to seniority rights of the members of the craft represented by the bargaining representative. Lewellyn v. Fleming (10 Cir.) 154 F. (2d) 211.... In Casey v. Brotherhood, etc. 197 Minn. 189, 192, 266 N. W. 737, 738, we held that such bargaining authority includes authority to contract with reference to seniority and said:

" . . . Aside from contract, there is no inherent or fundamental right to preference by virtue of seniority in service. Therefore the matter of seniority or place

upon the seniority list is subject to the contract between the parties. All seniority rights are held by the railroad employes by virtue of the contract which has been made in their behalf with the railroad company by their 'brotherhood.'

"An employment contract between a railroad and its employes statutory bargaining representative containing provisions for seniority rights of employes may by agreement operating prospectively not only be amended and interpreted, but also entirely superseded. The conclusion follows from the facts that a contract of employment between such parties may be amended, interpreted, or superseded, and that seniority rights, being a matter pertaining to rules and working conditions, are contractual. . . .

"In the Casey case, *supra*, in pointing out that changes in seniority rights may be made by contract between a railroad and a union, we said (197 Minn. 192, 266 N. W. 738):

" '. . . It was competent for the brotherhood to contract in behalf of its members that under certain conditions there should be a readjustment of seniority rights and a reranking of a member upon the seniority list.'

"And where by such a contract such a change is made, as said in Donovan v. Travers, 285 Mass. 167, 173, 188 N. E. 705, 707:

" '. . . The employee stands no higher than the union. If it modifies the agreement with the employer, the employee must acquiesce.' "

The collective agreement is binding upon all in the group or craft represented, even though it may be detrimental to some individuals: Schlenk v. Lehigh Valley R. Co., 74 F. Supp. 569 (D. C. N. J., 1947):

". . . Such a collective bargaining agreement is the joint and several contract of the members of the union, made by the officers of the union as their agents, and is enforceable against one for whose general benefit

such agreement was made, even though it resulted in no benefit to such individual."

The case of Hartley v. Brotherhood of Railway and Steamship Clerks, 283 Mich. 201, 277 N. W. 885 (1938), is one of the early and leading cases on the subject. The Supreme Court of Michigan held that the collective bargaining representative had the power to modify or amend the contract in the general interest of its members, even though plaintiff personally there suffered loss or her seniority and consequently her employment.

Seniority rights, created by a union contract, exist only during the life of the contract. They have no independent existence, and may be changed or eliminated entirely by a later agreement. In System Federation No. 59, etc., v. Louisiana & A. Ry. Co., 119 F. (2d) 509 (C. C. A., 1941), cert. den. 314 U. S. 656, the court said:

"The only question with which we are here concerned is whether the seniority rights claimed, arise out, and exist, because of, the 1929 contract, and persist during and only during its term, or whether they indefinitely continue to exist after it has been abrogated, and the relations of employer and employee are no longer fixed and being carried on, under that contract, but for many years under rules, promulgated by the company, and later under a contract between the company and the union which affirms that it 'covers all understandings now in effect.'

"*On this point the authorities are uniform. They settle it that collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract, beyond its life, when it has been terminated in accordance with its provisions.*" (Italics supplied.)

The case of Elder v. New York Cent. R. Co., 152 F. (2d) 361 (6 C. C. A., 1945), is authority for the propo-

sition that inasmuch as seniority rights are created by a union contract, they may be modified or destroyed by a later contract. There the court held:

". . . In the instant case, the appellant rests upon no right created by statute, but solely upon a collective bargaining agreement, made between the chosen representative of the workers and the employer. The fact that he was not a member of the union labor organization which lawfully bargained for him and for all other employees of the company neither strengthens nor weakens his position. His individual seniority rights were both created and limited by the bargain which was made for and was binding upon all employees for whom it was made. See Norfolk & W. R. Co. v. Harris, 260 Ky. 132, 136, 84 S. W. 2d 69, and cases there cited; Cannon v. Brotherhood of Railroad Trainmen, 262 Ky. 113, 89 S. W. 2d. 620."

The court then goes on to quote from the Hartley case, supra, as follows:

". . . This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members."

A Federal case, Bozar v. Central Pennsylvania Quarry, Stripping & Construction Co., 73 F. Supp. 803 (M. D. Pa., 1947), sums up the rules briefly as follows:

"Seniority rights under collective bargaining agreements may not be impeached by individual contracts.

See J. I. Case Co. v. N.L.R.B., 1944, 321 U. S. 322, 338, 339, 64 S. Ct. 576, 88 L. Ed. 762. Employers cannot refuse to bargain with the union. N.L.R.B. v. George P. Pilling & Sons Co., 3 Cir., 1941, 119 F. 2d 32. Nor can they reject a justifiable demand to modify an existing agreement. Consolidated Aircraft Corp. v. N.L.R.B., 9 Cir., 1944, 141 F. 2d 785."

The courts will not inquire into the wisdom of the action taken by the collective bargaining agent, or substitute their judgment as to what is best for the union members for that of the duly certified union: Division 525, Order of Railway Conductors of America et al. v. Gorman et al., 133 F. (2d) 273 (8 C. C. A. 1943) :

"It appears without dispute that the defendants have dealt with the representative of the Order in effecting the collectively bargained agreements, and they cannot be required to examine into the specific authority granted the representative of the Order. Under the laws of the Order the decision of the President on appeal was binding, it was apparently made in good faith, and courts will not ordinarily interfere with the decisions of the tribunals of a voluntary unincorporated labor organization. The court cannot substitute its judgment for that of the President of the Order. George T. Ross Lodge No. 831 v. Brotherhood of Rail road Trainmen, 191 Minn. 373, 254 N. W. 590; Louisville & N. R. Co. v. Miller, 219 Ind. 389, 38 N. E. 2d 239; Ryan v. New York Cent. R. Co., 267 Mich. 202, 265 N. W. 365; Order of Railway Conductors of America v. Shaw, 189 Okl. 665, 119 P. 2d 549."

Plaintiffs strongly rely upon the opinion of Chief Justice Harlan F. Stone in the case of Steele v. Louisville & N. R. Co., 323 U. S. 192, 203, in which he said:

"The representative which thus discriminates may be enjoined from so doing, and its members may be enjoined from taking the benefit of such discrimina-

tory action. No more is the Railroad bound by or entitled to take the benefit of a contract which the bargaining representative is prohibited by the statute from making. In both cases the right asserted, which is derived from the duty imposed by the statute on the bargaining representative, is a Federal right implied from the statute and the policy which it has adopted. *It is the Federal statute which condemns as unlawful the brotherhoods' conduct.*" (Italics supplied.)

We agree with this logic, but it will be noted that in Chief Justice Stone's opinion, the duly certified bargaining agent clearly violated the Federal statute prohibiting the discriminatory agreement entered into between the representative and railroad company and where the board of adjustment lacked the authority and power to aid plaintiffs, injunctive relief was granted by the courts. But the distinction is clear between the Steele case, supra, and the many cited in this opinion involving change in seniority status, the latter principle upheld in every jurisdiction.

Plaintiffs' bill makes broad general conclusions of fraud wholly unsupported by the facts. This is not sufficient to warrant injunctive relief. This principle has been clearly determined in the case of Kepler v. Kepler et al., 330 Pa. 441, in which Justice Kephart, speaking for the court, said:

"It is not enough to allege a legal conclusion that there has been fraud; the facts constituting the fraud must be clearly and explicitly set forth in the bill of complaint. Otherwise a demurrer or preliminary objections will be sustained: Rice v. Braden, 243 Pa. 141; see also Levine v. Pittsburgh State Bank, 281 Pa. 477, 481, 482; Schuster v. Largman, 308 Pa. 520, 532, 533; Newman v. Newman, 328 Pa. 552, 554."

The Superior Court of this Commonwealth affirmed this same principle in Hanna et al. v. Oldach et al., 160 Pa. Superior Ct. 190.

It is clear to this court en banc that the company must bargain with the duly certified bargaining agent —system federation in the instant case—concerning seniority rights of employes (represented by plaintiffs), and with no other agent—*and that was done in this proceeding.*

It is only by contract that any seniority rights exist, and such rights may be modified or even destroyed between the company and agent (system federation).

The fact that some employes may be adversely affected does not invalidate the agreement. Unless there is a direct violation of the statute, as Chief Justice Stone said in the Steele case, supra, the courts will not interfere nor substitute their judgment for that of the union as to whether the bargain is a wise one or not.

We believe the law of this Commonwealth has been judicially declared that where the duly certified union has negotiated a contract on a proper subject for collective bargaining, such as seniority, no equitable relief is warranted simply because some individual members of the union feel that it is a bad bargain. Authority for this principle is the case of Brown v. Lehman et al., 141 Pa. Superior Ct. 467, in which Judge Stadtfeld, in *reversing a decree for injunction in a labor case involving a claim by* an individual against the union, said:

"An injunction is a very drastic remedy, the use of which should be restricted except upon clear and convincing testimony of an intended or threatened injury."

We cannot subscribe to plaintiffs' contention that the agreement is unconscionable, but if plaintiffs ever suffer actual damage by reason of the agreement, and the agreement is invalid, they will have an adequate remedy at law.

We feel that the bill of complaint fails to state a cause of action upon which this court can grant injunctive relief, for under all the circumstances and the law applicable, and in the interest of collective bargaining, we are required to uphold the validity of the agreement.

The preliminary objections, filed by defendants, are sustained, and the bill of complaint is hereby dismissed.