BEELER v. CHICAGO, R. I. & P. RY. CO.
(two cases).

Nos. 3585, 3586.

Circuit Court of Appeals
Tenth Circuit.

July 21, 1948.

Rehearing Denied Aug. 17, 1948.

558

Claude Sowers, of Wichita, Kan., for appellant.

J. E. DuMars, of Topeka, Kan. (Clayton M. Davis, of Topeka, Kan., and George Stallwitz, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant J. P. Beeler, brought these two actions against the appellee Railroad Company, based upon a collective bargaining agreement between the Railroad Company and the Yardmasters Union, of which he is a member. The agreement, dated May 20, 1944, pertinently provided that yardmasters should not be disciplined or dismissed without a hearing before the superintendent, and that such employees should be apprized of the precise charge against them and have a reasonable opportunity to secure the presence of necessary witnesses and the right to be represented by an accredited representative. It also provided that eight hours work should constitute a day, and the time worked in excess of the eight hours would be considered overtime and paid for at the rate of time and one-half "on positions covered by the agreement."

One action is for reinstatement of appellant's position as yardmaster with the Railroad Company at Wichita, Kansas, with full restitution of salary and seniority rating at that point, or in lieu thereof damages for his wrongful discharge from that position, based upon his salary as yardmaster for his life expectancy. The other action seeks judgment for alleged overtime compensation for hours worked in excess of the eight hour day provisions of the bargaining agreement, and for expense of the use of his automobile in connection with the performance of his duties.

The cases were consolidated for trial, and the trial court found that at all times complained of, appellant's position with the Railroad Company was not covered by any collective bargaining agreement, and that he had no right of action thereunder. The court also found in effect that his employment with the Railroad Company contemplated a twelve hour day, without expense for the use of his automobile. Beeler has appealed from the judgment in favor of the Company in each case.

The evidence shows that Beeler became a switchman for the Company at Caldwell, Kansas, in 1904, and in 1907 he was promoted to the position of yardmaster at that point. In 1917, he was transferred to the terminal at Wichita, Kansas, as yardmaster. On January 1, 1938, the station agent at Wichita retired, and Beeler assumed his duties, with the official designation of "agent-yardmaster". As such agent-yardmaster, he had charge of the freight agency, freight warehouse, the yards (including switching operations), and all employees in such branches of the service. He was paid $20 per month in addition to his regular yardmaster's salary of $280, for a twelve hour day. No one was appointed to take his place as yardmaster, and the position was officially abolished at that terminal on February 3, 1939. While he was yardmaster at Wichita, several engines were used in the yards for making and breaking up trains, but at the time he was appointed agent-yardmaster, Wichita was not a division point where trains were made or broken up, and only one engine with a crew of five men was used in the yard to remove or add cars billed to or from Wichita. Beeler spent most of his time in the freight office, but was often called out on the road in case of wrecks, floods, or other emergencies.

When, soon after his designation as agent-yardmaster, Beeler learned that his seniority as a yardmaster was carried on the roster at Caldwell, he filed a protest, contending that he should be "bulletined"

as a yardmaster with seniority at Wichita. The matter was referred to the General Chairman of the Yardmasters Union, who took it up with the appropriate personnel official of the Company. As a result, Company official, F. H. Frey, on February 3, 1939, wrote to W. F. Mielke, General Chairman of the Yardmasters Union, stating that it was agreeable with the Company to carry Beeler on the Wichita yardmasters' seniority list, and "as per our agreement the position of agent-yardmaster at Wichita will be considered an official position, not covered by any working agreement, but should a yardmaster position be re-created at Wichita Mr. Beeler would be entitled to consideration for same on basis of his seniority as a yardmaster at that point." A copy of this letter was "accepted" by Mr. Mielke and returned to the Company. There is no affirmative showing that Beeler was advised of the letter, however on March 2, 1939, he was notified that he was being carried on the seniority roster as a yardmaster at Wichita.

Appellant continued in the position of agent-yardmaster at Wichita until June 17, 1946, when he received the following notice from the Company: "You are relieved as Agent at Wichita. You can exercise your seniority where you so desire." He then sought to exercise his seniority rights as a yardmaster at Wichita, but was informed that since the position of yardmaster at Wichita had been abolished and his present position of agent-yardmaster was an official position not covered by any bargaining agreement, he could assert no seniority rights there. He was told that he could exercise his seniority rights as a switchman at Caldwell, Kansas.[1]

As we understand appellant's position, it is to the effect that at all times complained of, he was essentially a yardmaster, performing the additional duties of a station agent for an additional salary of $20.00 per month; that as agent-yardmaster, he was an "employee" or "subordinate official" within the applicable definitive orders of the Interstate Commerce Commission then in effect, and as such, was a party to the collective bargaining agreement which forbade his discharge without cause and a hearing; that the collective bargaining representative had no authority to agree that he was an official, and thus exclude him from the protection of the collective agreement; and that the agreement between the Union official and the Company, and the attempted abolishment of the yardmaster position at Wichita without notice to him, was ineffectual to deprive him of his rights and benefits under the collective bargaining agreement.

■ If appellant's employment comes within the bargaining contract invoked, no one questions his right to maintain an action for damages for the breach thereof. See Moore v. Illinois Cent. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Union Pac. R. Co. v. Olive, 9 Cir., 156 F.2d 737. Conversely, apart from his automobile expense, he has no right of action outside the contract. His employment is terminable at will, and his discharge without a hearing was not an actionable wrong. Littell v. Evening Star Newspaper Co., 73 App. D.C. 409, 120 F.2d 36; Annotation 161 A. L.R. 709; Restatement on Agency, Sec. 442; 35 Amer.Juris., p. 456-8.

■ The Railway Labor Act of 1926, as amended, 45 U.S.C.A. § 151 et seq., 44 Stat. 577, vouchsafes and encourages collective bargaining between the railroads and their employees through designated bargaining representatives. Order of Railroad Telegraphers v. Railway Exp. Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788; Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. It, however, specifically recognizes the right of an individual employee to confer with management concerning matters of individual interest, and the bargaining representative is not authorized to bind the individual employees on matters outside the scope of the collective interest. Elgin J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 and 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928. See also Lewellyn v. Fleming, 10 Cir., 154 F.2d 211. The statute does

[1] Under the successive bargaining agreements with the Yardmasters Union, yardmasters retained their seniority rights as switchmen at point of service as a switchman.

not draw the line or prescribe the boundaries between the collective interest in which the bargaining representative is authorized to act for the employee and the individual interest in which the employee is entitled to individual representation with notice and opportunity for hearing. Nor have the courts found a ready formula for delimiting such authority. Elgin J. & E. R. Co. v. Burley, supra. Beeler authorized his bargaining representative to negotiate with his employer concerning the status of his seniority as a yardmaster. He did not authorize him to agree that his job as agent-yardmaster was an official position not covered by any working agreement. But we doubt whether the agreement between the bargaining representative and the Company was intended or operated to exclude Beeler from the collective agreement. Rather, we think the agreement was merely recognition or confirmation of the general understanding that the position of agent-yardmaster at Wichita was an official position not covered by the working agreement. Indeed, Beeler acknowledged the receipt of a letter from Superintendent Henderson dated January 12, 1939, stating in part that "on January 1, 1938 your status was changed to Agent-Yardmaster's position, which, of course, does not come under the Yardmaster's agreement * * *."

▮▮ The Act does not interfere with the normal right of the employer to select its employees or discharge them, or to create and abolish positions, so long as it does not impair the collective bargaining process. Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginia R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. Cf. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Indeed, a prior agreement between the Yardmasters Union and the Company, effective January 1, 1938, executed in accord with the Railway Labor Act, specifically recognized the right of the Company to "establish and abolish" the position of yardmaster at any point on the system, and it did not provide for notice to any yardmaster affected by the Company's decision to establish or abolish a position. It is suggested that Section 6 of the Railway Labor Act requires such notice, but that Section providing for a thirty day written notice by carriers and representatives of an intended change in agreements affecting rates of pay, rules, or working conditions, obviously has reference to matters affecting the collective bargaining process, and does not relate to matters lying outside of its scope.

While the 1938 agreement was in force and effect, the Company elected to abolish the position of yardmaster at Wichita, and to create the position of agent-yardmaster there, with an official status not within the collective bargaining agreement. The appellant accepted the position of agent-yardmaster at Wichita, and assumed the duties, with the express understanding that it called for a twelve hour day, without automobile expense.

When in 1944, the Union and the Company came to write a new collective bargaining agreement (the one relied upon here by appellant), it was provided that it should govern "rates of pay, hours of service and working conditions of yardmasters where established", and it was also specifically provided that the "practice of station agents supervising switching service at various points will not be changed or considered as affected by this agreement. * * *" And it also provided (Article 10) that "When a yardmaster's position is abolished, the man affected, if competent, will have the right to displace a junior yardmaster at terminal where employed." Thus, the right of the Company to create and abolish the yardmaster position was recognized at all times by the Union and never disputed.

▮ It is not suggested that the 1944 bargaining agreement is inconsistent with or contrary to the requirements, aims or purposes of the Railway Labor Act, but appellant argues that his duties as agent-yardmaster constituted him ipso facto an "employee" within the meaning of the Act, and therefore within the scope of the collective bargaining agreement, regardless of

his title. Of course the Company could not abolish the job of yardmaster by merely changing the title. See Hanks v. Delaware & H. R. Corporation, D.C., 63 F.Supp. 161.

Section 1, Fifth, of the Railway Labor Act, 45 U.S.C.A. § 151, Fifth, provides that the term "employee" as used in the Act includes every person in the service of a carrier who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission then in effect, and as may be amended or interpreted by further orders. Acting under the general powers conferred upon it by the Transportation Act of 1920, 41 Stat. 456, 49 U.S.C.A. § 71 et seq. the Interstate Commerce Commission, on February 5, 1924, entered Ex Parte No. 72[2], in which it undertook to classify supervisory station agents as officials and subordinate officials. The order pertinently provided that supervisory station agents at large and important stations, whose duties were wholly supervisory, and who were necessarily vested with greater responsibilities than agents classed as subordinate officials, might be designated officials and excluded from the class of subordinate officials.

Here, for eight years, appellant performed the duties of a station agent at a large and important station. He occupied the office of the station agent, and supervised all of the business of the Company at the Wichita terminal, of which switching operations with one engine and one crew was certainly not the most important part. Admittedly, the agent's position at the Wichita terminal before and after his appointment was recognized as an official position not within any collective bargaining contract. It is thus manifestly plain that the Company was legally justified in abolishing the position of yardmaster and creating the position of agent-yardmaster with an official status. The appellant accepted the position with its rights, privileges and limitations. He is therefore not within the bargaining contract and cannot claim any rights thereunder. There is no evidence whatsoever of any express or implied agreement on the part of the Company to pay appellant's automobile expense. On the contrary, the evidence is to the effect that his request for automobile expense was emphatically refused.

The judgments are affirmed.

---

[2] Ex Parte No. 72 entered without report. See p. 3374, Interstate Commerce Acts Annotated, Vol. 4.

"Supervisory Station Agents. The duties and responsibilities of supervisory station agents vary so widely that they cannot all be consistently designated subordinate officials. This class will be subdivided, therefore, as follows:

"(a) Routine Duties. Supervisory station agents who, in addition to their supervisory duties, are required to perform work usually performed by telegraphers, telephone operators, ticket sellers, bookkeepers, towermen, levermen, or similar routine duties are employees and, although they may have supervision over one or more other station employees, cannot be properly designated subordinate officials.

"(b) Supervisory Duties. Except those referred to in the next succeeding paragraph, supervisory station agents whose duties are wholly supervisory and who are not required to perform routine office work, as outlined in the preceding paragraph, are designated as subordinate officials.

"(c) Greater Responsibilities. Supervisory station agents at large and important stations whose duties are wholly supervisory, and who are of necessity vested with greater responsibilities, duties and authority than agents hereinbefore classed as subordinate officials, may be designated officials and excluded from the class of subordinate officials."